MILLER, Judge.
Roxanne Boling filed this suit against her husband seeking a separation from bed and board based on cruel treatment. David Boling reconvened, seeking a judgment of separation on grounds of abandonment. From a judgment in favor of the husband on his reconventional demand, denying alimony to the wife, and awarding $150 per month child support, the wife has appealed.
Appellant contends that the wife proved husband guilty of cruel treatment which rendered their living together insupportable, within the meaning of LSA-C.C. Article 138, Par. 3; that the trial court erred in denying alimony to the wife; and that the wife is entitled to $250 per month child support.
Mr. and Mrs. Boling were married April 1, 1967, and established their marital domicile in Lake Charles, Louisiana. Mrs. Bol-ing continued to work for the Louisiana Department of Conservation and Mr. Bol-ing with The Boling Insurance Agency, Inc., both in Lake Charles. A son was born of this marriage on March 9, 1968. She returned from maternity leave to her job in August, 1968 and about that same time enrolled for a night course at McNeese State College, where she was also active in her sorority.
On December 29, 1968, Mrs. Boling moved to the home of her parents in Lake Charles and .advised her husband by telephone that she would not return to the marital home. She has not returned.
On January 6, 1969, she filed this suit alleging as grounds for separation, her husband’s cold and indifferentness, his picking at her and arguing, his conduct causing her embarrassment, his inattention to family responsibilities, his drinking every night which upset and excited her (but she did not allege nor prove habitual intemperance), and a threat to abandon her.
Notwithstanding the trial court’s admonition to counsel at the start of the trial' to omit general statements or conclusions, but instead to produce specific incidents on which conclusions could be based, the trial court found that there was but one specific instance which might justify a legal separation. As to this, the trial court found:
“ * * * about the only specific instance that Mrs. Boling could point to was (an incident that occurred) at the YMBC dance (on December 21, 1968). The evidence as to what happened there, in the opinion of this court, is conflicting. It is impossible for this court to tell from the evidence which was presented what really occurred, and that is not to say the court believes one side or disbelieves the other side. It is simply a fact that the burden of proving the matter by a preponderance of the evidence is on Mrs. Boling, and that is, proving some cruelty on the part of her husband; and, in the opinion of the court, the evidence does not make that proof.”
Although this incident occurred on December 21, 1968, Mrs. Boling did not leave the marital home until December 29 stating as the specific cause for her leaving:
“Well, it was the same thing. After that party he was always arguing about something or correcting me about something; and that day (December 29) he didn’t have much to say and I just couldn’t stand it anymore.”
We find from the record, as did the trial court, that plaintiff failed to prove cruel treatment.. The totality of the evidence which could be characterized under the term “cruel treatment” establishes only incompatibility and frustration between the parties, each probably as much to blame as the other. Many of ,the wife’s allegations were disproved by her own testimony.
*425 To establish her husband’s cold and indifferent attidude, she testified that he did not kiss or care for their son in the presence of her family and friends; that he did not speak to her. On the other hand she admitted that he frequently told her he loved her; that he gave her many gifts each year; and that he has continuously tried to get her to return to live with him. Furthermore, she did not deny her husband’s testimony that he returned home for lunch almost every day to care for and play with his son, and that he tried to get her to meet him at home for lunch. Admittedly, she never went home for lunch.
His alleged picking and arguing was apparently limited to one comment in 1967 concerning her posture; to one suggestion that she might try a different beauty operator; and to her almost exclusive association with a long time friend and co-employee, Mrs. Nancy Summers. It was well established that Mrs. Boling would not argue about anything. It was not denied that she would not discuss a family budget, nor would she keep records of checks which she issued. She preferred not to attend dances and football games, and would only attend with her husband when her friend Mrs. Summers could go along.
Mr. Boling was employed as an insurance salesman and if he was to succeed in that business, he had to make new friends and associate with his old friends. It was not unreasonable for him to attempt to meet new people and to ask his wife to accompany him in an effort to make new friends.
There were two incidents which allegedly embarrassed Mrs. Boling. One occurred at the McNeese Alumni dance in October of 1968 and the second at the YMBC dance on December 21, 1968. Mrs. Boling did not testify concerning the first incident, but it was related by Mrs. Summers. Mr. Boling attempted to bring a bottle of liquor to his table at the dance. He was stopped at the door. According to Mrs. Summers there was quite a scene which embarrassed Mrs. Boling no end. Mr. Boling explained that there was no difficulty. He brought the bottle back to his car and returned to the dance. His wife never mentioned the incident to him.
The second incident, the only one seriously considered by the trial judge, was related by both Mrs. Boling and Mrs. Summers, with Mrs. Summers’ version being substantially more aggravated. According to Mrs. Boling, her husband wanted “to sit with other people, people we didn’t even know. He would always rather sit with people he thought was the social group; and when we were on the dance floor he would push and pull on me; and when we sat down he had me by the neck and pushed my chair from under me.” Tr. 81.
This was denied by Mr. Boling. His witness Mr. Phil Hunter who sat at the same table (except while dancing or visiting friends at other tables), did not notice anything unusual that evening. He thought that Mr. Boling was a perfect gentleman.
As noted earlier, the allegation concerning husband’s drinking every night, does not allege habitual intemperance. Instead Mrs. Boling contended that his drinking upset and excited her. She did not produce testimony from her family physician to verify her alleged condition. There is no proof in the record that Mr. Boling has ever been drunk, or that his wife complained about his drinking. Instead the evidence preponderates that he only drinks socially.
The contention that Mr. Boling threatened to abandon his wife was based on one statement made at the YMBC dance. Mr. Boling explained that he suggested to his wife that if he could not visit with his friends at the dance, he would go home. In any event, it was well established that on several occasions before (and after) suit was filed, Boling pled with his wife to return to their home to live with him.
We are unable to find error by the trial judge, particularly in view of the fact that *426 an evaluation of the evidence depends to some extent on the credibility of the witnesses, which must he left largely to the trial judge. Sullivan v. Sullivan, 215 So. 2d 198 (La.App. 3 Cir. 1968).
Mrs. Boling earns $410 each month. She testified that her take home pay is $308. To this we must add the $150 per month child support which she receives. Mrs. Boling has no medical or dental expenses for the child, for the court ordered that Mr. Boling pay all such expenses in addition to the $150 per month. In summary, Mrs. Boling has a net income each month of $458.00.
Mr. Boling earns $675 per 'month and can count on receiving a Christmas bonus of an additional $675. Thus, his monthly salary is $730. Withholding totals $159.70 and child support payments of $150 reduce his usable monthly income to $420.30, less any medical or dental expenses incurred for treatment of his son.
Alimony for the wife is based on her need and the husband’s means. LSA-C.C. Article 148. The need must be proven and the alimony must be fair and just to each. The trial judge’s discretion will not be disturbed unless there has been a clear abuse of this discretion or manifest error in his factual appreciations. Vestal v. Vestal, 216 So.2d 386 (La.App. 3 Cir. 1968); McMath v. Masters, 198 So. 2d 734 (La.App. 3 Cir. 1967). We find no abuse of discretion.
The contention that Mr. Boling should be ordered to pay $250 per month as child support was based on the fact that in 1968, he had $12,000 of additional income from family held corporations. It was well established that this was an unusual year and that this could not be expected in 1969.
LSA-C.C. Article 227 obligates the father AND the mother to support, maintain and educate the children born of the marriage. The trial judge stated that this award could and would be amended in the light of the future needs of this infant and of the father’s ability to pay. Again, we find the trial court’s award of $150 per month child support well supported by the record.
The judgment appealed is affirmed. All costs of this appeal are assessed against plaintiff appellant.
Affirmed.